Vincent A. Lupiano, J.
This writ of habeas corpus proceeding was remanded to Special Term for a new hearing (9 A D 2d 375). At the first hearing the Justice presiding granted the writ and awarded custody of the two infant children involved to their mother with visitation rights to the father, the respondent.
Upon reversal of the order and remand, the Appellate Division cautioned that “ the reports submitted to the trial court are not a part of the record, and were not available to counsel for the parties. They contain many significant conclusions that were not explored on the trial. A determination would rest on a more solid foundation, if some of the facts and conclusions stated in the reports were developed, made a part of the record, and the parties given the opportunity to explore the issues in that respect. * * * That reports of experts are incalculably beneficial as aids to the court in custody matters is no longer open to question. What must be borne in mind, however, is that they are only aids and, if not woven into the fabric of the record, should not form the base for the decision” (supra, pp. 376, 378). The reports referred to are those made by the family counsellor, psychiatrist and psychologist, which were for the use of the court pursuant to stipulation of the parties; they may be made available to the parties or, if not, they should be so exposed or alluded to as to become “ woven into the fabric of the record ’ \
Extended hearings were conducted, which, at the outset, were prefaced by a preliminary hearing. At that initial juncture, the confidential reports made to the court were exposed in essential parts. In doing this the court said this procedure was taken “ so that in the course of presentation and development of the evidence * * * these things will be borne in mind and the respective witnesses who may be presented may be examined and cross-examined with such matters projected in the *627 examinations of those witnesses. In that way * * * any matters contained in the report, by such exposure, could be met with the challenge of examination and cross-examination and production of further witnesses * * * than those presented heretofore.”
Accordingly, when the hearings commenced in earnest, pertinent matters contained in the reports which had been used by the experts became 11 woven into the fabric of the record ”. However, the recommendations of the experts did not, in my opinion, require outset revelation and were withheld. In that sphere, the court elected to deal with such findings by launching lines-of inquiry from that phase of the report, thusly providing more than inkling stimulation for the examination of the parties, witnesses, and the presentation of other evidence relevant thereto. Having been alerted to some of the matters stated in the reports and given sufficient interval, the parties attacked and counterattacked along those lines which suited their interests. In this process, conclusions became sufficiently well tested and essentialities came to rest in the “ fabric of the record ”. Of course, these reports do not replace the primary importance of tested record considerations; yet, when they find support in the record they should, naturally, have a significant impact upon the judicial process, else there would be no point in having them in the first place. And when it appears that the family counsellor, psychologist and psychiatrist have considered facts, tested and tried through the opportunity of exposure and examination, their reports, so based, become worthy and useful aids. I must say that the excellent report of the family counsellor (Mrs. Sylvia L. Golomb) has proved to be just that, in this most difficult situation.
The relator brought on the writ on behalf of Marion Groen (maiden name), mother of the children, who will hereinafter be referred to as the petitioner. The children of petitioner and the defendant, Roland J. Kaufmann, are a daughter, Toni, now almost eight years old, born on August 18, 1952, and Peter, six years old, born on January 26,1954. The petitioner and defendant were formerly husband and wife. They were first married on April 24, 1947. They separated in November, 1949. The first marriage was annulled in May, 1950. About eight months later, on January 20, 1951, they remarried. Petitioner was stricken with polio on September 14, 1953, when she was pregnant with Peter, and has since been confined to a wheel chair. They separated again July, 1954, signed a separation agreement on May 31, 1956 and were divorced August 13, 1956. The writ involved herein was returnable in February, 1959; the first bear *628 ing was held in October, 1959; the new hearing extended through May, 1960.
The facts adduced upon remand are similar, in the main, to those brought forth at the original hearing. However, the evidence developed under suggestions of the Appellate Division has been enlarged; some of which has been culled and explored by the parties with finite degree. Each party attempted to portray the other in a cold and selfish aspect, touching upon facets both as parent and former spouse. It is more important, of course, to see each party in the role of parent, since it is the duty of this court to award custody to the parent who can better serve the children’s best interests (see Domestic Delations Law, § 70). The intensity of the situation may be felt in the feeling of the Appellate Division that “ While both parents here appear to be worthy enough to be entrusted with the care of the children, we have grave doubts as to which is better qualified” (supra, p. 376).
This proceeding has been bitterly and closely waged. Both parties seek permanent custody of the children. From March 1 until October 3, 1954, petitioner was a patient at the Institute for Physical Medicine and Behabilitation, New York City; a day later, she took up a position as resident nurse at Bellevue Hospital, earning $3,180 per year. She was then physically unable to take care of the children. Defendant agreed to care for the children until the mother could do so and has done so up to the present time. Petitioner, now, vigorously asserts her ability to assume full parental responsibility.
In July, 1954 petitioner told defendant' that she did not wish to live with him; that she intended to terminate their marriage. In 1952, the family had moved to an apartment on East 4th Street, New York City, and defendant continues to reside there, with the children, and his former housekeeper, Marianne Sven-son, now his wife, whom he married on February 20, 1959, the day the writ was returnable.
With great determination, petitioner continued and continues to pursue her career, although largely confined to a self-operated wheel chair. She remained at Bellevue as a medical co-ordinator until December, 1957, when she moved to Collingswood, New Jersey, a metropolitan suburb of Philadelphia; then she began work as director of nursing at Magee Memorial Hospital in Philadelphia. On November 13, 1959 she moved to her present residence in Philadelphia, assuming her present position, in January, 1960, as director of-nursing services for a group of convalescent homes in Philadelphia, at a salary increasing from $6,000 to $10,000 per year. She has leased an apartment in a *629 housing development not far from where she' is employed. There she resides alone, and would like to have her children in an environment which she urges has far better play and school opportunities than those in the neighborhood where they presently live. Roland Kaufmann is an architectural engineer and has a shop a short distance from his home. He is 55 years old and Marion Groen is 36 years old; the school which both children attend is within walking distance of their home; it is a good school. Following breakfast, prepared by Mrs. Kaufmann, defendant walks with the children to school each morning, or, if the weather is bad, Mrs. Kaufmann drives them there. After school, Mr. Kaufmann call's for them.
There is no doubt in my mind that the parties have put their best foot forward since the previous hearing for the purpose of impressing the court with their greater desirability as parents. The defendant would seek living quarters in the suburbs; he would also give them more religion. Even the petitioner, who did not manifest much religious concern for the children, would guide' her children along the path of religion, if given custody. This spirit of competition, in some measure, augurs well for the children’s future.
In the posture of this record, juxtaposed to the reports, my conclusions coincide with those expressed in the report and recommendation of the family counsellor. In the memorandum submitted to the court, after trial, petitioner says she “ assumes that the report and recommendation of the Family Counselling Unit supports the claim of petitioner that the welfare of the children will best be served by giving custody to her. No other assumption is consistent with the prior decisions of Judge Epstein and of the Appellate Division. Relator assumes that, absent compelling reasons for a different decision, this court will adopt the findings and recommendations of the Family Counselling Unit. Relator urges no compelling reasons have been shown by defendant for rejecting such findings and recommendations. No legal impediment to acceptance of the Family Counselling Unit report and recommendations exists, since both parties by stipulation authorized the court to use such findings and recommendations in arriving at its decision.”
The report of the family counsellor unqualifiedly recommends that the children remain in the custody of their father.
The psychiatric evaluation of the petitioner, that she is a “ driven woman with a high degree of impulsive behavior ” is borne by the facts, as evidenced by her sudden announcement of separation in July, 1954, and her decision to be divorced. Moreover, I am persuaded that she did not then have the mater *630 nal concern for the children as might be expected, even considering her then physical and mental plight.
While there is some conflict respecting the amount of visits and the availability of the children to the petitioner, keeping in mind her physical difficulty to visit with the children at will, the court cannot shake itself from the conviction that the petitioner did not show a firm maternal desire to make contact with the children, were it done only for the sheer joy of talking to them. I can understand the difficulties in the way of more frequent visits and do not assess adversely the alleged lack of them. However, I do not accredit petitioner’s testimony that she telephoned the children frequently, or that she was financially unable to make long-distance calls when residing in Pennsylvania. One call a week would have been worth the price, just to hear her children’s voices; nor would this expense have seriously depleted her finances. As the report indicates, “ she, in terms of her own tremendous drive and need for independence, struggled to prove to herself, even at the expense of her children.” While the petitioner may well feel a great desire to have the children unto herself, I cannot, from the record, its fair intendments and courtroom observation, conclude that petitioner would desire custody of these infants because of pure maternal feeling alone. Bather, I view her petition, in part at least, as the consummation of a victory over a terrible ordeal, which may draw legal recognition to her for her incredible determination and successful achievement in a remarkable struggle for rehabilitation. Already she has drawn considerable well-deserved newspaper publicity for this great achievement. While such determination is greatly admirable, the recommendation of the family counsellor that “ she might easily secure the children and then whimsically decide that this role was not for her ” is akin to the conclusion which the court reaches in these circumstances, fortified, perhaps, by the further reminder that for a period of over six years, ever since petitioner was stricken with polio, the children have been cared for by the defendant, except that for a period of 15 months, Peter, because of special care needed, was cared for by his maternal grandmother in Flemington, New Jersey. Moreover, petitioner had no convincing answer to the charge that she made no inquiry at the school concerning the children’s progress and well-being. Oppositely, both the father and foster mother have displayed marked interest in the children’s school work.
True, petitioner was not physically and financially able to demand earlier her rights under the separation agreement of *631 May 31, 1956. However, I am not persuaded that it was she, rather than her attorney, who initially rejected the proposed agreement which would have given full custody to the defendant, but which eventuated in the later executed agreement providing for equitable custody. This conclusion finds rationalizing support in the limited extent custody was initially sought by the relator; this she sought to change, and did later at the hearing, by way of amending the petition to the extent of seeking full custody. Apropos, petitioner claims that defendant’s breach of the agreement impelled petitioner to institute the instant proceeding; yet, at the outset, she did not request full custody even though she asserts that she was then financially and physically able to assume that degree of custody.
The children are doing well in school, and to uproot them now would strike needlessly against them, and place them in “ a new and hazardous situation removed from all that is familiar and known to them. In view of their chaotic early history such a change should be frowned upon. They need a long period of stabilized living under which to prosper. ’ ’ The quoted portion finds root in the record.
While the children have shown preference for their mother, their expression, however, should not control the judgment of the court. They are being maintained in a secure and loving manner; the present Mrs. Kaufmanh, a sincere, devoted, foster mother, has consistently given them care and affection, and has assisted them to develop and mature. While the suburban life depicted by Miss Groen may show more salutary atmosphere than exists at East 4th Street, the environment in defendant’s home is fuller and safer, in most significant respects, than the one offered by petitioner.
The court has found it extremely difficult in making this decision, but its first concern “ is to provide such custody as, under the circumstances, will best protect and preserve the health, welfare, education, and well-being of the infant.” (People ex rel. Fields v. Kaufmann, 9 A D 2d 375, 377, supra.)
Perhaps, when the children show more self-reliance or there be a change of relevant circumstances, the petitioner may then well seek fuller custody and enjoyment of her children. Upon the present showing, the court feels that permanent custody should be awarded to the father, who has not shirked or impaired the responsibility for the care and custody of these children, which has been cast almost wholly upon him during the past six years, •virtually since they were born. Liberal visitation shall be granted to the petitioner. Accordingly, she is granted alternate *632 weekends and the full Christmas and Easter holidays alternately each year. Also, the children shall remain with her at her residence, or at such Summer residence as she may provide, for one month during each Summer, either July or August, unless the parties shall agree otherwise. Conditions of- visitation shall he similar to the ones now in effect.