James J. Conroy, J.
In this habeas corpus proceeding, the petitioner, Joseph T. Kendrick, seeks the permanent custody of his infant son, Drew Trotwood Kendrick.
The petitioner and the respondent, Loreine Y. Kendrick, were married on July 18, 1942. The issue of such marriage are Pamela York Kendrick, a daughter now 13 years of age, and Drew Trotwood Kendrick, now age 9. The proceeding relates solely to the son. Both children reside with the respondent, their mother, in Queens County, New York, wherein they have resided since 1954.
By a decree of the District Court of the State of Oklahoma filed on October 8, 1954, the petitioner and the respondent were *939 divorced. Prior to the entry of the decree, the parties had entered into a written agreement which was approved, attached to and made a part of such decree, which became final six months after the entry thereof. This agreement, contained among other provisions, the following: “ (4) That the husband shall, within one week after the hearing on his petition for divorce, surrender to the wife temporary custody of the infant male child, Drew Trotwood Kendrick, with the express understanding and agreement, however that if a decree of absolute divorce is passed dissolving the marriage of the parties hereto, and if the husband then remarries, the wife agrees to surrender said male child to the husband and grant to him permanent custody of said child.” The respondent testified that she was under some compulsion when she made this agreement and that she did not have a free choice.
On August 20, 1955, the petitioner was married to one Elise Kendrick, who had a child by a previous marriage, a girl Juliet now 9 years of age whom he thereafter legally adopted. The petitioner and his present wife adopted another child, a girl now 3 years of age. It is the contention of the petitioner that after his remarriage as aforesaid, he made a number of requests of the respondent to surrender custody of his son, Drew, to him but she did not comply with such requests. On November 24, 1961, when Drew resided with his mother in the city and State of New York, petitioner moved in the Oklahoma Court in which the decree of divorce had been granted for a modification of the final decree of divorce so as to grant to him permanent custody of his son in accordance with the separation agreement incorporated in the decree. The respondent appeared specially in that proceeding, challenging the jurisdiction of the court. Her objections were overruled and the court made an order providing, among other things, as follows: “it is ordered and decreed, that the plaintiff, the father be and is hereby awarded the temporary custody of the said son, Drew Trotwood Kendrick, and, the defendant, the mother, is ordered to deliver custody of said son to the ‘ plaintiff within ten days ’ * * *
“ it is ordered Aíro dbcreed eurther, that the plaintiff is given permission to keep said son at his place of abode outside of the State of Oklahoma and to take him on foreign missions and to foreign stations in the performance of transitory duties as a representative of the Secretary of State of the United States # # # n
The petitioner is in the diplomatic service of the United States, a foreign service officer of the Department of State of the United States of America and has been so employed for *940 approximately 20 years. He is from time to time attached to an embassy of the United States in a foreign land and has, during his service, been attached to our embassies in Nicaragua, Poland, the Soviet Union, Germany and Afghanistan. He is currently the chief of a political section, temporarily assigned to Washington, D. C., and awaiting assignment to an embassy. He anticipates that he will be assigned to South Africa, but there is no certainty when and if such assignment takes place.
The petitioner does not complain about the care and upbringing his son is receiving. In a letter written to the respondent, dated November 22,1961, he said: ‘1 In all honesty, you must be given credit for having contributed greatly toward making Drew a fine and attractive boy.” It is his contention that if he had custody, the boy would be afforded the companionship and guidance of a father and Drew would,' as petitioner expresses it, have a chance for wider emotional and intellectual experiences than he has had so far or is likely to have under his present circumstances. Petitioner further claims that if he takes his son to South Africa, the British system of education available there would help the boy, in spite of the fact that he concedes the New York City school which the son now attends is excellent. There was no amplification of this thought sufficient to convince the court that there would be any advantage if the boy is educated under the British system over the training he is receiving in the New York City school. Indeed, there is no assurance that the petitioner will be assigned to South Africa. Petitioner feels that in the section of that country in which he might be assigned, there would be no danger of uprisings or physical harm to the boy. Although the petitioner has never been in South Africa, himself, he says he is advised by his department that there is no present danger of harm and if there should be, that plans and provisions have been made to safeguard the personnel of the embassies.
The boy stated to the court that he would like to go with his father. The court could not determine from its interview with him whether his real desire was to be with the father or to experience the thrill of travel to foreign lands. Under such circumstances, the duty of the court to act as parens patries, to do what is best for the interest of the child, should not be influenced by his wishes. (People ex rel. Glendening v. Glendening, 259 App. Div. 384, affd. 284 N. Y. 598; People ex rel. Brussel v. Brussel, 280 App. Div. 784.) The psychiatrist who examined Drew was of the opinion that an abrupt break from the home of his mother and sister is likely to cause harmful emotional disturbances to him, although he thought if he were *941 conditioned for such a change over a period of time, such disturbances might not occur.
In Matter of Bachman v. Mejias (1 N Y 2d 575, 581), the court said: “ It is the duty of the New York Supreme Court to determine the custody of minor children in this State and such determination is to be based solely on the welfare of the minors. The responsibility for the welfare of infants endows the court with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction. (People ex rel. Herzog v. Morgan, 287 N. Y. 317, 320; People ex rel. Allen v. Allen, 105 N. Y. 628.) It transcends the rule of comity. Comity is a matter of policy. (Rosenbaum v. Rosenbaum, 309 N. Y. 371, 375.) This rule of policy must yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards. The individual rights of infants to invoke the protection of the State in which they reside cannot be ignored.”
The court finds the care and custody of this boy at the present time to be entirely satisfactory and adequate. Although it is urged by the petitioner that greater cultural advantages will be afforded the child if his custody is granted to the father, such is not discernible in view of the uncertainty of the father’s future assignments. Consideration must be given to the fact that in the branch of the service to which the petitioner is attached, he may be assigned to far reaches of the globe where the educational facilities may be not comparable to the system he anticipates in South Africa. The petitioner also urges that Drew would have the advantages of the companionship of a father. It would seem that the companionship of the mother of a 9-year-old boy and her care and love is equally important for the welfare of a child. To now change the custody of this boy and allow his removal to all parts of the globe, to the exclusion for long periods of even visitation rights to the mother with whom he has lived for the past seven years, does not seem to be serving the best interests of this child. The court can find no compelling reason to change the custody of this child which would be of any appreciable advantage to his welfare and upbringing. The petition is accordingly denied.
The petitioner should be allowed liberal visitation rights. The parties have acted intelligently heretofore in respect to visitation. If the parties can agree to such visitation rights as can be approved by the court, they will be incorporated in the order to be entered herein. If the parties cannot agree, the court will fix such rights.