Louis B. Heller, J.
This is a motion for summary judgment by defendant wife in an action brought by the husband declaring the Alabama divorce of the parties to be null and void.
Plaintiff’s action is predicated upon the following facts as alleged in his moving papers:
The parties hereto were married on January 16, 1959. Sometime in September of 1962 defendant went to the State of Alabama and commenced an action for divorce on the ground that plaintiff herein had voluntarily abandoned defendant for more than one year preceding the filing of her bill of complaint. That at the time of the institution of the action neither plaintiff nor defendant was a resident of the State of Alabama. That defendant had temporarily gone to Alabama solely for the purpose of obtaining the divorce; that defendant did not establish a bona fide residence of one year as required by Alabama law but returned to New York prior to or after the entry of the judgment of divorce. That since defendant had not complied with the residency requirements of Alabama the decree obtained is invalid, null and void and of no force and effect.
Defendant does not challenge the facts but questions the legal conclusions drawn by plaintiff and adds that plaintiff appeared by attorney in the Alabama action and did not contest the divorce at that time. That prior to submitting to the jurisdiction of the Alabama court, plaintiff had consulted with and obtained the advice of a New York attorney. Defendant takes the position that plaintff is now estopped from attacking the validity of the Alabama decree and the judgment must be given full faith and credit in this jurisdiction.
Alabama decrees of divorce have been recognized by our courts pursuant to the authority of Boxer v. Boxer (7 A D 2d 1001, affd. 7 N. Y. 2d 781). The Boxer case held that “ since appellant [wife]'appeared in the Alabama divorce action and had been given the opportunity to litigate the question of respondent’s domicile, the Alabama decree finding that respondent was a domiciliary of that State is conclusive on the courts *362 of all the other States, if appellant does not have the power subsequently to attack the decree in Alabama.” The court went on to say:11 Under Alabama law appellant could not attack the Alabama decree because she failed to contest the jurisdictional allegations in the divorce action without negligence, since she knew of their falsity immediately and in time to interpose a defense, and because she failed to appeal from the decree within the time limited by law,” citing Sherrer v. Sherrer (334 U. S. 343) as authority. See, also, Coe v. Coe (334 U. S. 378) and Johnson v. Muelberger (340 U. S. 581), which cases hold that the State of the forum should not permit an attack on a judgment of a sister State where such attack would not be entertained in the granting State.
However, a corollary principle to the above-stated rule is that it is possible that the law of the State of rendition as it pertains to collateral attack may change from time to time and hence the corresponding full faith and credit application of a sister State may expand or contract accordingly.
Up to and including the holding in the Boxer case it was recognized that the Alabama courts would not entertain an attack on its decrees where there was an appearance by both parties and the jurisdictional factors were not questioned at that time. (See Levine v. Levine, 262 Ala. 491; Wright v. Wright, 230 Ala. 35; Aiello v. Aiello, 272 Ala. 505.)
However, recent developments in Alabama require a re-evaluation of the holding in Boxer v. Boxer (supra). In 1961 the < Supreme Court of Alabama had before it the matter of Hartigan v. Hartigan (272 Ala. 67) which involved a divorce obtained in Alabama by New York residents who did not reside in Alabama at the time. Subsequently, the husband sought to modify the alimony provisions of the decree and with both parties appearing before the Alabama court extraneous evidence was introduced without objection showing that the wife fraudulently declared herself to be a resident of Alabáma and her husband participated in the fraud. The Circuit Court on its own motion set aside the original divorce decree on the ground that it had been procured by fraud and was void for lack of jurisdiction. On appeal the Alabama Supreme Court affirmed and held that the lower court had the power to set aside the divorce decree as both parties were physically before the court and facts showing a lack of jurisdiction were either admitted by the parties or allowed to be introduced without objection. It is apparent that the court expressly limited its holding in voiding the former divorce decree where the original *363 decree had been issued by the same court, in a matter between the same parties and the supervening invalidity was apparent on the face of the record so that the court could act sua sponte. Though the decision of the court was limited to its facts the implication of the holding was a possible qualification of the ruling against collateral attack on judgments valid on their face but void in fact.
Two years later in 1964 in the case of Winston v. Winston (276 Ala. 303) the Supreme Court of Alabama put to rest all speculation and permitted a wife to set aside a prior Alabama divorce obtained by her on the ground that neither she nor her husband, who appeared at that time, was a resident of Alabama. Thus, the court announced the “ death knell ” of the “ quickie ” Alabama divorce. As a result of the Winston case, migratory divorces secured in Alabama are now open to attack in Alabama '(the granting State) and accordingly vulnerable in the forum State. However, a careful reading of the case reveals that the result reached therein was not so broad in scope as to permit indiscriminate attacks on all decrees of divorce rendered in Alabama. Though the husband’s defense of laches was decided adversely to him, the court was careful to note that a delay of nine and one-half months was not prima facie (emphasis supplied) a bar to relief. It is obvious that the court did not decide that laches was not a defense to be considered but rather that a delay of nine and one-half months was not prima facie evidence of laches sufficient to bar relief. Likewise I am convinced that it was not the court’s intention to dismiss the defense of estoppel entirely. Thus the court took great pains to distinguish the cases cited by the husband in support of his argument that the wife was precluded from questioning the validity of the divorce obtained because of her fraudulent conduct. The court stated (pp. 305-306) :
“Appellee argues that the cases of Levine v. Levine (262 Ala. 491, 80 So. 2d 235) and Fairclough v. St. Amand (217 Ala. 9, 114 So. 472) bar appellant from relief because they ‘ stand for the proposition that one who procures a divorce by fraudulent conduct is estopped to question its validity.’
“We think both cases are easily distinguishable from the instant case. In those cases, the parties seeking to have the decrees of divorce vacated had received benefits, financial and otherwise from the other party, and these accepted benefits were the bases of the conclusions reached in those two cases. We quote two statements from the Levine case to illustrate: ‘ The wife having enjoyed the fruits of the original decree *364 (over $20,000), now seeks to declare it void. This she is estopped to do, ’ and ‘ Rachel Levine having plucked the goose in 1949, seeks to get her fingers into a new crop of feathers in 1953. ’ ’ ’
In the case of Fairclough v. St. Amand (supra) cited by defendant in Winston v. Winston (supra) the court there refused to set aside a decree of divorce where there was a change in the position of the parties. (A child born of the second marriage.)
It is clear that the Alabama court was anxious to put an end to the migratory “ quickie ” divorces and to re-establish the integrity of its judicial system. However, it is equally clear that the court would not permit a 1 ‘ carte blanche ’ ’ attack upon its decrees.
I am of the opinion that though this court will now permit an attack on an Alabama decree, the court should in its deliberations however examine, consider and weigh the various equitable principles heretofore discussed — i.e., laches, etc. and other pertinent considerations of justice to avoid any serious prejudice that might accrue if the decree were to be set aside.
I find, however, that the record before me is incomplete as to these essential elements. There is no explanation as to plaintiff’s delay of five years in bringing this action. There is no showing that plaintiff received benefits, financial or otherwise, which would estop him from attacking the decree; nor has it been established that there has been a change of position of the parties or that there exist other equitable considerations which would warrant a contrary finding by this court. Furthermore, plaintiff does not explain how his property rights under the Decedent Estate Law will be affected by an adverse determination.
The paucity of facts submitted by the parties forecloses the court from reaching a final determination on the merits at this time. Accordingly, defendant’s motion is denied without prejudice with leave to defendant to renew her motion upon proper papers if she be so advised. It is also suggested that plaintiff submit additional proof in accordance with the opinion herein if he be so advised.