Hugh R. Elwyn, J.
By writ of habeas corpus which has been referred by the Supreme Court to this court for hearing and determination the petitioner seeks to regain the custody of his two daughters, Susan, age 10 and Hannah, age 3 from his former wife, Renee Irakles who on December 9,1967 brought the children from their father’s home in Memphis, Tennessee to her mother’s home in Wallkill, New York.
At the trial a sharp issue of fact developed as to whether the respondent brought the children to her mother’s home in New York State with or without the petitioner’s consent, the respondent contending that she brought the children to New York with the petitioner’s approval and consent, whereas the petitioner contends that his children were taken from their home in Memphis, Tennessee without his consent. However, since a resolution of this custody contest does not turn on a determination of whether the children were brought to New York with or without their father’s consent, the conflict in the testimony on this score need not be resolved.
Indeed, the long and sorry history of the many bitter disputes and unhappy differences, stemming largely from financial insecurity which plagued this marriage and poisoned the parties’ relationship both before and after marriage and which finally *429 culminated in divorce, while interesting and informative as background material is, under the circumstances of this case, of no great legal significance to the determination of the custody of these children. However, insofar as there were differences of detail with respect to their marital relationship, the circumstances leading up to and surrounding their divorce and the wife’s surrender of the children to her husband at the time of the divorce, I am more inclined to credit the husband’s version of these events than the wife’s, for he at least did not have to confess perjury on the witness stand. While there were times when the court felt that neither party was being completely candid, the wife completely shattered her credibility when she was constrained to admit under oath that the petitioner was the natural father of her children and that in asserting in her verified answer to the petition that he was not the father of her children she had sworn falsely. Thus it plainly appears that in order to retain custody of her children the respondent was willing not only to commit perjury, but was also willing to bastardize her own children.
The petitioner predicates his right to the custody of his two daughters upon a final decree of divorce rendered in the Circuit Court of Shelby County, Tennessee on May 10, 1965 wherein the parties were divorced and the exclusive care and custody of the children born of this union, Susan Hahn, Stephen Hahn* and Hannah Hahn were adjudged and decreed to the cross complainant, Martin Hahn, the petitioner herein with the right however, in the cross defendant, Renee Irakles, to see and be with the children at all reasonable times.
Although the respondent contends that she was emotionally upset and distraught at the time of the divorce because of her dire financial circumstances due to the petitioner’s refusal to supply her with money for her and the children’s support and that she placed the children temporarily in the petitioner’s custody with the understanding that they would be returned to her when she regained her strength and health, she does not question the validity of the Tennessee divorce or the jurisdiction of the Tennessee court to grant the same. Instead she contends that her marriage to the petitioner on February 8, 1962, nearly five years after the birth of their first daughter, Susan on March 19, 1957 was invalid and void, because at the time of the marriage the petitioner had a wife living from whom he was not divorced. From these facts the respondent argues *430 that since her marriage to the petitioner was void, her children by the petitioner are illegitimate, the petitioner as the putative father of out of wedlock children has no right to their custody and that she as their natural mother has the sole and exclusive right to their custody — ergo, the court should award her custody of .the children.
Apparently recognizing that there is a strong presumption in favor of the validity of a ceremonial marriage and that it is not incumbent upon those asserting a marriage to prove that an earlier marriage was terminated by death, annulment or divorce, but rather that in the case of conflicting marriages of the same spouse the burden of showing the existence and continuity of the first marriage is on the party asserting it (Kopit v. Zilberszmidt, 35 N. Y. S. 2d 558, 566-567; Matter of Brown v. Brown, 51 Misc 2d 839 ; Matter of Case v. Case, 54 Misc 2d 20) the respondent sought to show that the petitioner’s marriage to his first wife was still subsisting at the time of her marriage to him in 1962 because of the invalidity of an Alabama divorce the petitioner had procured from his first wife in 1961. The Alabama divorce is said to be invalid because neither the petitioner nor his former wife, Sylvia Hahn was a resident of the State of Alabama at the time the divorce was procured.
The respondent did offer some proof which made it appear extremely doubtful that the petitioner could have been a bona fide resident of the State of Alabama for one year as required by Alabama law prior to the commencement of the divorce action, but failed to introduce into evidence the Alabama decree. The petitioner admits that he was previously married but asserts that he procured a divorce from his first wife in the State of Alabama prior to his marriage to the respondent in Tennessee in 1962. Relying upon the presumption of validity of his ceremonial marriage to the respondent and the full faith and credit which this court must accord to the Alabama divorce decree, the petitioner made no effort to meet the respondent’s attack on the validity of his Alabama divorce.
In support of her contention that she may collaterally attack the validity of her husband’s Alabama divorce by showing that at the time of its procurement he was not a resident of the State of Alabama the respondent cites Bard v. Bard (16 A D 2d 801); Sommer v. Sommer (36 Misc 2d 379) and Wasserman v. Wasserman (49 Misc 2d 577). The cases of Bard v. Bard (supra) and Sommer v. Sommer (supra) are readily distinguishable. The holding in Bard (p. 802) that “ the courts of this State are not required to give full faith and credit to a *431 foreign divorce decree where the plaintiff * * * was not a permanent resident of the foreign State ’ ’ is coupled with the additional proviso “ and where the appearance on behalf of the defendant spouse either was not authorized or was procured through fraud, coercion or duress ’ In Sommer the court recognizes (p. 380) “ that under certain circumstances a decree of divorce of a sister State may be collaterally attacked in our courts ” by “ accepting the premise that there can be a collateral attack on the Alabama decree upon proper allegations of an enticement into the foreign jurisdiction by fraud, coercion and duress ”. There is in this case neither allegation nor proof that the defendant spouse’s appearance in the Alabama court was either unauthorized or procured by fraud, coercion or duress.
The case of Wasserman v. Wasserman (supra, p. 578) recognizes that “ a collateral attack on that [Alabama] decree may only be permitted in this State if such is permitted in Alabama.” To the extent that the case finds ‘' that such a collateral attack is permitted in Alabama ”, citing Smith v. Smith (247 Ala. 213) its finding is completely at variance with the more recent Court of Appeals decision in Weisner v. Weisner (17 N Y 2d 799, 802) where the court said: “ The Alabama law is not clear concerning whether, under the circumstances of this case, its courts would permit such a collateral attack upon plaintiff’s divorce as is made in this action ” citing Fairclough v. St. Amand (217 Ala. 19); Davis v. Davis (255 Ala. 488); Hartigan v. Hartigan (272 Ala. 67); Aiello v. Aiello (272 Ala. 505); Winston v. Winston (276 Ala. 303); Lutsky v. Lutsky (183 So. 2d 782 [Ala.]). The court eliminated from the order appealed from the annulment granted to defendant against plaintiff upon the ground that plaintiff’s Alabama divorce from her previous husband can only be attacked in the courts of Alabama.
Following its decision in Weisner, a year later the Court of Appeals in Magowan v. Magowan (19 N Y 2d 296, 299), a case in which a husband, who was sued for a separation counterclaimed for an annulment claiming his wife’s Alabama divorce from her first husband to be jurisdictionally void, said: “ It is settled that when, as in the present case, both parties to an out-of-state divorce appeared in those divorce proceedings, a stranger to the decree may collaterally attack it in our courts only if he establishes that the rendering State permits such an attack. (See, e.g., Weisner v. Weisner, 17 N Y 2d 799; Goldsmith v. Goldsmith, 19 N Y 2d 710; Johnson v. Muelberger, 340 U. S. 581, 587; Cook v. Cook, 342 U. S. 126, 128.) ” The *432 defendant having failed to meet the burden imposed upon him, the Court of Appeals held (p. 300) that, “in this situation, we must accord full faith and credit to the decree. It may be attacked by the defendant, if at all, only in the courts of Alabama.” (See, also, Levess v. Levess, 27 A D 2d 927, republished 28 A I) 2d 513, affd. 21 N Y 2d 758, rejecting on the authority of Magowan v. Magowan, supra, a collateral attack on the validity of an Alabama decree by a stranger to the proceedings; to same effect Virgil v. Virgil, 55 Misc 2d 64; cf. Iatauro v. Iatauro, 55 Misc 2d 360, permitting attack on Alabama decree by party to the decree, since migratory divorces secured in Alabama are open to attack in Alabama.)
The respondent in this case likewise failed to demonstrate that Alabama would permit a collateral attack on its decree and on the authority of Weisner v. Weisner, Magowan v. Magowan and Levess v. Levess (supra) her collateral attack on the validity of the petitioner’s Alabama divorce decree is rejected. With the rejection of the respondent’s attack on the validity of her husband’s Alabama divorce from his first wife, all legal basis for her plea to be awarded the custody of her children upon the ground that as the mother of illegitimate children she has a superior right to their custody as against their putative father has been completely swept away (cf. Matter of Cornell v. Hartley, 54 Misc 2d 732). Consequently, both parties stand equal with there being no prima facie right in either parent to the custody of their minor children and the court commanded by statute to determine solely what is for the best interest of the child and what will best promote its. welfare and happiness, and to make award accordingly (Domestic Relations Law, §§ 70, 240).
The custody of these children has already been once determined by the courts of Tennessee. The respondent who was the complainant in the Tennessee divorce action is estopped to attack the validity of the judgment rendered herein, and having participated in that action she may not in this State relitigate the issue of domicile or the jurisdiction of the Tennessee court to grant the divorce (Lynn v. Lynn, 302 N. Y. 193, 201, citing Johnson v. Muelberger, 340 U. S. 581; Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Davis v. Davis, 305 U. S. 32; Senor v. Senor, 297 N. Y. 800; Matter of Rhinelander, 290 N. Y. 31, 36-37; Glaser v. Glaser, 276 N. Y. 296). At the time of the matrimonial proceeding in Tennessee the children were physically present in the State of Tennessee, so that the Tennessee court having jurisdiction of the parties also had jurisdiction to pass upon the question of custody and to render a decree *433 thereon which is entitled to full faith and credit in this State as against the respondent’s claim to custody in these proceedings (Davis v. Davis, 305 U. S. 32; Ansorge v. Armour, 267 N. Y. 492; Matter of Standish, 197 App. Div. 176, affd. 233 N. Y. 689; People ex rel. Tull v. Tull, 245 App. Div. 508, affd. 270 N. Y. 619; Matter of Kananack, 272 App. Div. 783; Matter of Boice, 286 App. Div. 1126; Matter of Sutera v. Sutera, 1 AD 2d 356).
Nevertheless, “ In New York, it is settled that the mere physical presence of the child in the State is sufficient to confer on its courts power to make effective disposition for the child’s welfare, including the determination of custody.” (Matter of Lang v. Lang, 9 A D 2d 401, 406, affd. 7 N Y 2d 1029.) “It is the duty of the New York Supreme Court to determine the custody of minor children in this State and such determination is based solely on the welfare of the minors. The responsibility for the welfare of infants endows the court with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction.” (Matter of Bachman v. Mejias, 1 N Y 2d 575, 581.) Such responsibility transcends the rule of comity as well as full faith and credit (May v. Anderson, 345 U. S. 528; Matter of Hicks v. Bridges, 2 A D 2d 335; People ex rel. Pritchett v. Pritchett, 1 A D 2d 1009, affd. 2 N Y 2d 947; People ex rel. Herzog v. Morgan, 287 N. Y. 317; Matter of Bull [Heilman], 266 App. Div. 290, affd. 291 N. Y. 792; People ex rel. Halvey v. Halvey, 185 Misc. 52, affd. 269 App. Div. 1019, affd. 295 N. Y. 836, affd. 330 U. S. 610; Finlay v. Finlay, 240 N. Y. 429, 431). In short, as the court said in People ex rel. Abajian v. Dennett (15 Misc 2d 260, 264): “ the decrees of [foreign] States in no way diminish the prerogative of the courts of the State of New York as ‘ parens patriae ’ to do what it considers best for the welfare of the child within its jurisdiction.”
However, the statement of the Court of Appeals in Matter of Bachman v. Mejias (supra, p. 580) that “ the full faith and credit clause does not apply to custody decrees ” should not be construed to mean that the same issues may be relitigated in any forum in which the child may be found or that our courts will change the foreign decree simply because we do not agree with it. It is only when circumstances have so changed since the entry of the foreign decree as to render it necessary for the child’s best interests that a change in custody be made that our courts can alter or modify the foreign decree (Finlay v. Finlay, supra; Matter of Abreu v. Abreu, 46 Misc 2d 942; Family Ct. Act, § 654). Until some such facts appear our courts cannot *434 change the Tennessee decree simply because they do not agree with it (Ansorge v. Armour, supra, p. 499; People ex rel. Herzog v. Morgan, supra, p. 320; People ex rel. Tull v. Tull, supra, p. 510; Matter of Bull [Hellman], supra, p. 291; Matter of Jiranek, 267 App. Div. 607, 610; People ex rel. Abajian v. Dennett, supra, p. 265; 16 N. Y. Jur., Domestic Relations, § 988; 25 N. Y. Jur., Guardian and Ward, § 83).
There is here no proof of any change of circumstances adversely affecting the welfare of these children since the rendition of the Tennessee divorce decree of May 10, 1965, except those wrought by the respondent’s removal of the children to her mother’s home in Wallkill, New York. Indeed whatever change there has been in the petitioner’s and hence in the children’s circumstances since May of 1965 has been only improvement. The petitioner’s financial circumstances have remarkably improved; he has remarried and established a home for himself, his wife and their children and has recently moved into a modern, attractively furnished home in a residential area of Memphis, Tennessee. The photographs of the exterior and interior of this home leave no doubt in the mind of the court that insofar as physical surroundings and creature comforts \ are concerned these children are well cared for. More importantly, they can partake of the benefits of an intact family life which the petitioner’s new marriage can provide as contrasted with the necessarily incomplete family life which the mother, who is absent from the home during the week because of employment, and the grandmother, no matter how well intentioned, can afford. In addition, considerations of family unity would dictate that all three children born of this union should be brought up in the same household; no benefits that could possibly accrue from separating the two sisters from their brother have been pointed out.
In arriving at the conclusion that no sufficient change of circumstances has been shown to justify this court in modifying the custodial arrangements made by the Tennessee court I have not overlooked the fact that the child, Susan expressed a preference to remain with her mother. It is unquestionably right and proper for the court to consider the child’s wishes and preferences in custody cases (Kesseler v. Kesseler, 10 N Y 2d 445, 451) and when the child is of sufficient age and understanding the expressed wishes of the child as to the parent in whose custody it wishes to be placed are a factor of importance entitled to be taken into careful consideration by the court in determining the child’s custody as between contesting parents (People ex rel. Brussel v. Brussel, 280 App. Div. 784; People ex rel.
*435 Himber v. Himber, 136 N. Y. S. 2d 456; Matter of Travis, 126 N. Y. S. 2d 130; Matter of “Bologna”, 199 Misc. 705; Osterhoudt v. Osterhoudt, 28 Misc. 285, affd. 48 App. Div. 74; People ex rel. Norwood v. Coffey, 12 A D'2d 579).
However, in the case of a 10-year-old child whose preference for one parent or the other can be so easily influenced by discipline or the lack of it, or by the denial or gratification of childish desires the wishes of the child are not, in the final analysis, controlling, and will not deter the court from making a contrary determination if in the court’s judgment, the best interests of the child require it. (People ex rel. Brussel v. Brussel, supra; People ex rel. Geismar v. Geismar, 184 Misc. 897; Matter of Kendrick v. Kendrick, 32 Misc 2d 938, 940; People ex rel. Fields v. Kaufmann, 27 Misc 2d 625-, 631.) Any other policy would be practically to abandon the jurisdiction of the court and make the child the sole judge of his own best interests and welfare (People ex rel. Glendening v. Glendening, 259 App. Div. 384, 392, affd. 284 N. Y. 598).
No sufficient change of circumstances having been shown to justify any modification of the custody provisions of the Tennessee divorce decree (Finlay v. Finlay, supra', Family Ct. Act, § 654) and the court also being satisfied that the best interests of the children will be promoted by returning them to the custody of their father the writ is sustained and the custody of the children, Susan and Hannah Hahn is awarded to the petitioner, subject to such visitation privileges to the respondent as is provided by the Tennessee decree.

 Stephen Hahn is presently residing with his father in Memphis, Tennessee and is not involved in this custody dispute.