Hugh R. Elwyn, J.
In this proceeding under the Uniform Support of Dependents Law, originated in the Family Court of Suffolk County, the petitioner seeks support for herself and her 13-year-old son. The respondent concedes his liability for the support of his son, but denies any responsibility for the support of the petitioner upon the ground that their marriage has been terminated by divorce (Domestic Relations Law, § 32, subd. 1; Matter of Fleischer v. Fleischer, 24 A D 2d 667; Ross v. Ross, 206 Misc. 1073; Martin v. Martin, 58 Misc 2d 459).
The petitioner and the respondent, her second husband, were married at Kingston, New York on March 20, 1954. Five years later on March 6, 1959 the petitioner obtained an Alabama *1021 divorce from the respondent, and on August 16, 1959 in the State of Oklahoma she married her third husband, Joseph Schiavone. On March 9, 1967 the petitioner’s marriage to Schiavone was annulled by a judgment of the New York Supreme Court of Suffolk County upon the ground that at the time of her marriage to Schiavone she had a spouse who was then living and from whom she was not validly divorced. The judgment of annulment declared the legitimacy of the child born of the marriage (Domestic Relations Law, § 145, subd. 3), but made no provision for alimony for the wife (Domestic Relations Law, § 236).
In a memorandum decision holding the petitioner’s Alabama divorce from Brown to be invalid the Supreme Court of Suffolk County wrote: “ There is no evidence that plaintiff ever in fact resided in or even visited Alabama prior to her arrival there on March 5, 1959. Her contrary statement and the admission by her former husband were clearly false and constituted a fraud on the Alabama Court. In these circumstances that Court never acquired jurisdiction over the parties and collateral attack on the decree is permissible (Magowan v. Magowan, 45 Misc 2d 972, 258 N. Y. S. 2d 516, affd. 24 A. D. 2d 840, 263 N. Y. S. 2d 947; see Matter of Goodman, 25 A. D. 2d 646, 268 N. Y. S. 2d 545).”
Ironically, Magowan v. Magowan (supra), relied upon by the Supreme Court as authority for permitting the plaintiff’s collateral attack upon his wife’s Alabama divorce from Brown was later reversed by the Court of Appeals (19 NY 2d 296 [April 6, 1967]); and Matter of Goodman (supra), although not appealed, is of doubtful authority in the light of the Court of Appeals reversal of Magowan and other cases to the same effect (see Weisner v. Weisner, 17 N Y 2d 799; Levess v. Levess, 21 NY 2d 758; Virgil v. Virgil, 55 Misc 2d 64; Matter of Hahn v. Falce, 56 Misc 2d 427).
However, no appeal was ever taken from the judgment of the Supreme Court annulling the petitioner’s marriage to her third husband, so that by judgment of the Supreme Court of this State she is no longer the wife of Schiavone. Moreover, since the court made her no award of alimony, she' has no redress against him. Does this judgment also have the effect, as she contends, of reviving her status as the wife of Brown, the respondent in this proceeding, so as to make him liable for her support?
Although it is true, as the petitioner points out, that in order for the court to annul her marriage to Schiavone it had to find that her marriage to Brown was still in full force and effect (Domestic Relations Law, § 140, subd. [a]), it does not follow *1022 that the annulment of her void marriage to Sehiavone has revived Brown’s obligation to support her (Gaines v. Jacobsen, 308 N. Y. 218, overruling Sleicher v. Sleicher, 251 N. Y. 366; Denberg v. Frischman, 17 N Y 2d 778).
The reasons for reaching this seemingly anomalous result (the exact opposite of that which the court reached in Sleicher) are stated by the Court of Appeals in Gaines v. Jacobsen (supra, p. 224) to be these. “ Today, through the operation of section 1140-a [now Domestic Relations Law, § 236], the wife can receive support from the husband of the annulled marriage, where ‘ justice requires, ’ and there is no more reason to revive the obligation of the first husband — a stranger to the annulment —■ than there would be if the remarriage were terminated by divorce. The 1 purposes of justice ’ now dictate that his discharge, effected when the wife goes through a second marriage, be permanent, that he be not required to stand perpetually ready to resume her support should the remarriage some day be annulled. The interests of justice require, too, that, as between successive husbands, the wife look to the last one for support, and, certainly, that she be given neither two sources of support nor the ability to choose between her first and second husbands for the more profitable. ’ ’ The court concluded (p. 226): ‘ ‘ Hav.ing remarried, she chose to abandon her right to support from defendant in favor of Harragan. Plaintiff could not retain both husbands as sources of support; having made her choice, she is bound by it, although subsequent events prove it to have been an improvident one. ’ ’
An additional reason for denying the petitioner support from the respondent is that, although the Supreme Court of this State has declared her marriage to Sehiavone void by reason of the invalidity of the Alabama divorce decree, as between her and Brown she is estopped under the doctrine of Krause v. Krause (282 N. Y. 355) to assert the invalidity of the divorce she procured.
The petitioner’s plight can only be likened to that of the dog with the bone of Aesop’s fables. Having divorced Brown to marry Sehiavone, which marriage proved as illusory as the reflected bone in the water, she now finds that although the courts say that she is still married to Brown, she has lost the right to his support. In short, through the maze of her own misguided marital adventures she has lost even that which she had.
Since the respondent’s obligation to support his former wife has not been revived by the annulment of her third marriage (Gaines v. Jacobsen; Denberg v. Frishman, supra), the petition, *1023 insofar as it seeks support for the petitioner, is dismissed. There is already in existence a support order for the benefit of the son which is continued.