Guy Gilbert Ribaudo, J.
This is an action for a divorce instituted by the plaintiff wife; a counterclaim for divorce was interposed by the defendant husband. Both parties requested custody of the two minor children, aged 14 and 8. Throughout the pendency of this action the parties continued to reside in the marital domicile, a spacious brownstone located in Manhattan. This arrangement provided the parties with separate quarters but created extreme tensions and pressures on the parties and the children.
FACTS
The plaintiff and defendant were married on April 9, 1960. There are two issue of the marriage, Eric, born on August 21, 1961, and Pia, born on December 12, 1967.
At the time the parties were married, the plaintiff, a native of Sweden, was engaged in the fashion industry. Subsequent to the marriage, she was never gainfully employed. The defendant has earned a Ph. D. in psychology, and was in the early stages of establishing his practice and reputation as a child psychologist.
During the marriage, commensurate with the defendant’s professional advancement, the parties enjoyed a high standard of living.
findings: divorce
After hearing all of the credible and admissible evidence and reading the documentary evidence, the court finds that both plaintiff and defendant have established their cause of action for divorce by a fair preponderance of the evidence.
The court has no question based on the bitterness and hostility involved in this litigation, that this has been a "dead marriage” for some period of time. It is clear that occasional strife, lack of domestic harmony, frequent quarrels between husband and wife and mere incompatibility furnish no grounds for a divorce decree. (Rios v Rios, 34 AD2d 325; Hessen v Hessen, 33 NY2d 406.)
*885 The court finds that the marital discord of the parties goes beyond mere incompatibility. Based on all the evidence, the court finds that the defendant had embarked and continued for an extensive period on a deliberately hostile and rude course of conduct specifically calculated to create unhappiness and suffering to the plaintiff wife. The court further finds that plaintiff has also engaged in a course of conduct over a continued period of time of verbal and physical violence towards the defendant husband for the purpose of demeaning him and causing both physical and mental suffering.
Therefore, the court grants plaintiff’s demand for a judgment of divorce on the grounds of cruel and inhuman treatment. Plaintiff’s other causes of action for divorce or separation are hereby dismissed. Accordingly, defendant’s counterclaim for a judgment of divorce on the grounds of cruel and inhuman treatment is granted. Defendant’s other counterclaims for divorce or separation are hereby dismissed.
The concept of dual divorce raises the further issue of whether a wife is entitled to alimony, or is she barred by her husband obtaining a "fault ground” decree of divorce? (Domestic Relations Law, § 236.)
In the present case, this court does not have to pass on this issue, inasmuch as the parties and their respective attorneys have entered into a stipulation in open court disposing of the financial and constructive trust issues in the action.
findings: custody
The most difficult issue presented fo the court for disposition is the question of which party shall be awarded permanent custody of the infant issue of this marriage.
The pleadings herein indicated that neither party was seeking custody of the children on the basis that the other spouse was by his or her actions unfit to be the custodian of the children, but rather alleged that each was better fit to rear the children.
Thus the scope of the court’s inquiry was not directed at applying the "unfitness theory” as the criterion, but rather the use of an affirmative standard, which parent was "better fit”, to guide the development of the children and their future. In applying the "better fit theory” it was inescapable that the "fitness” of the parties, both their negative and positive attrib *886 utes would be developed and put in issue during the course of the hearing.
Under well-settled statutory and case law, neither parent has a prima facie right to custody of a child (Domestic Relations Law, §§ 70, 240; Matter of Wout v Wout, 32 AD2d 709; Shell v Shell, 29 AD2d 950). The issue is one of comparative ñtness, with the paramount and controlling consideration being the best interests and welfare of the child (Domestic Relations Law, §§ 70, 240; Matter of Bachman v Mejias, 1 NY2d 575; Finlay v Finlay, 240 NY 429; Matter of Richman v Richman, 32 Misc 2d 1090).
Judge Cardozo, writing for the Court of Appeals in the Finlay case (supra) stated the court’s function in a custody dispute as follows: "The chancellor * * * acts as parens patriae to do what is best for the interest of the child. He is to put himself in the position of a 'wise, affectionate and careful parent’ [citing case] and, make provision for the child accordingly.” (Id., pp 433-434.)
In Matter of Richman v Richman (supra) the court stated the rule as follows: "It is the duty of the court to award custody to the parent who, under all the circumstances, can more adequately serve the child’s best interests. (People ex rel. Fields v. Kaufman, 9 A D 2d 375, 376) and best protect and preserve the health, welfare, education and well-being of the infant.” (Citing cases.) (Id., p 1091.)
Plaintiff contends that throughout the marriage she has always taken care of the children from the time they were born without the aid of a nurse or governess. This includes, and is not limited to, the daily routines of raising children and running a household.
Plaintiff further argues that defendant is deeply involved with his professional endeavors, will undoubtedly be unable to raise the children without the services of a third party, whether a relative, hired housekeeper, or governess. To award custody to the father in the instant case is tantamount to awarding custody to the third party. Moreover, the fact that the father has greater means than the mother, although a factor to be considered, is not controlling; the court may require the father to provide the mother with sufficient funds to raise the children properly. Although the courts take into account the expressed preference of a child of sufficient age and understanding as to the parent in whose custody he wishes to be, this factor is also not controlling. The courts *887 refuse to allow the child to be the sole judge of his own best interests; moreover, they have recognized that a child’s expressed preference can be induced, coaxed or otherwise influenced.
Defendant contends that plaintiff, by her conduct, has attempted to destroy and prevent any fatherly relationship of the defendant with his children; however, defendant if awarded custody would agree to and encourage liberal visitation rights to the plaintiff.
Defendant argues that he is better fit to have custody of the children in that the children have been happiest when with the defendant rather than the plaintiff; when they were exposed to the environment created by the defendant, his associates and his lifestyle, rather than that of the plaintiff; in that the children’s growth and development intellectually, morally and psychologically have been enhanced more when exposed to the defendant and the environment created by him rather than that of the plaintiff.
Defendant further argues that both children love and respect defendant, desire to live together with defendant and defendant is better able to care for and maintain them and give them a wholesome family upbringing.
The court is convinced that both parties exhibit genuine love and affection for the children. Neither parent has been neglectful of their parental duties, nor in any way can be characterized as being an unfit custodian of the children.
However, from all the evidence before the court, it has been clearly established that the best interests of the children would be served if permanent custody is awarded to the one parent that appears to more adequately satisfy the emotional and cultural needs of the children.
It is the judgment of this court that permanent custody of both infant issue is awarded to the father, Dr. Lee Salk, as it is the opinion of this court that he is the parent that can best nurture the complex needs and social development of these children.
The "past conduct of the parents relative to their marital obligations is a factor which may not be disregarded in determining which parent will provide the better home.” (Shell v Shell, 29 AD2d 950, supra.)
The courts have generally taken the position that it is not in the best interests of the child to award custody to a parent, *888 whether mother or father, if such action is tantamount to awarding custody to a grandparent or a third party. (Hoffmann v Hoffmann, 224 App Div 28; Matter of Earle, 26 AD2d 897, Miles v Liebolt, 230 NYS2d 342; Matter of ”FF” v "FF”, 37 AD2d 893; contra People ex rel. Wasserberger v Wasserberger, 42 AD2d 93, affd 34 NY2d 660; People ex rel. Glendening v Glendening, 259 App Div 384, affd 284 NY 598.)
The evidence indicates that the defendant has adjusted his schedule so that his professional commitments do not interfere with his children’s activities whenever possible. The defendant maintains his professional office in the lower level of the marital domicile. Furthermore, much of his professional activities include writing which is usually done at home or his hospital office, television and radio appearances, usually during the children’s school period. The evidence indicates that the defendant more often than the plaintiff met the children after school, and clearly had more contact with school officials with respect to the children’s educational development. The court considers it more important to ascertain the quality, rather than the quantity of time a parent devotes to his or her children, in determining the best interests of the child.
Often the courts, in awarding custody to one parent or the other, consider the relative financial positions of the parents. However, the mere fact that one parent, whether mother or father, is better able to offer the child adequate support than the other is not controlling. (People ex rel. Armour v Armour, 147 Misc 313; Glendening v Glendening, supra; Lester v Lester, 178 App Div 205, affd 222 NY 546; Metz v Morley, 29 AD2d 462.) Custody may be awarded to the parent financially best able to care for the child’s upbringing and education. (Matter of Kordes, 52 NYS2d 410.) The lack of a permanent or suitable home or firm source of income may bar custody to the parent. (Matter of Young v Poe, 265 App Div 858, affd 290 NY 823.)
The parties are from somewhat similar lower-middle class backgrounds. Neither party came into the marriage with any substantial capital assets. The plaintiff did not work during the marriage. The defendant has through professional achievement, been able to provide material advantages and luxurious living to the family.
The courts, in awarding custody to one parent or the other, may consider a parent’s professional achievements and personal associations, although this criteria is not controlling. *889 (Lester v Lester, supra; Glendening v Glendening, supra.) The court is aware that defendant has earned a high degree of professional esteem in the field of child psychology. However, the court does not base its decision on this factor, but because the defendant has proven himself to be faithful and exceptionally qualified to provide loving paternal influence and guidance to the children.
The court has taken the opportunity of interviewing the children in camera on three separate occasions. Once, prior to the commencement of trial, during the trial, and following the summer recess, at which time the trial was almost completed.
The court found Eric and Pia to be bright, intelligent and mature children. Both were very verbal and communicated their thoughts with a high degree of clarity. The children indicated a strong desire to remain together, and although exhibiting a genuine love for their mother, felt, especially Eric, that they would enjoy and be happiest living with their father, provided they could also be with their mother on a frequent basis.
The expressed wishes of a child of sufficient age and discretion are a factor to be considered by the court. (Bullotta v Bullotta, 43 AD2d 847; Hughes v Hughes, 37 AD2d 606; Dintruff v McGreevy, 34 NY2d 887; Matter of Lincoln v Lincoln, 24 NY2d 270.)
Recent case law would indicate that it may be improper for the court to make a custody determination without making any effort to determine the wishes and desires of the child. (Hambelton v Palmer, 27 AD2d 978; Bullotta v Bullotta, supra.) The courts must be aware that children can be influenced to state a particular preference. (Matter of Hahn v Falce, 56 Misc 2d 427; Glendening v Glendening, supra; People ex rel. Armour v Armour, supra.)
The court is convinced that the children have expressed their desires freely and with unusual insight and candor. Moreover, the court was convinced from these conversations and the expert psychiatric and psychological reports, that consideration should be given to the children’s preference. This evidence also was given weight and consideration in the court’s determination that it was beneficial for the children to be reared together, as courts are reluctant to separate siblings unless the necessity for split custody is clearly demonstrated by the circumstances of the case. (People ex rel. Moody v *890 Moody, 36 AD2d 627; Matter of Green v Green, 25 AD2d 935; Pact v Pact, 70 Misc 2d 100.)
In preparation of trial, defendant had his children interviewed by both a psychiatrist and psychologist.
Dr. Sol Gordon, Ph. D., is a clinical child psychologist. Dr. Gordon currently holds the position of Professor of Child and Family Studies at Syracuse University. Dr. Gordon testified that he interviewed Eric on October 12, 1974. The witness stated that "Eric showed no evidence of insecurity or emotional maladjustment. He appears to be a stable young man with many interests and friends. He is a very good student and seems to enjoy life.” Dr. Gordon felt that Eric could handle the ramifications of his parents’ divorce and manage the separation from one parent. Eric informed the witness, "that neither parent was applying pressure for him to stay with them, although both expressed preference for him to remain with them. Eric suggested that he would like his sister to be with him, but he was mainly interested in remaining with his father.” Dr. Gordon stated that in his expert opinion he would recommend that Eric be permitted to remain with his father. This conclusion was based on Dr. Gordon’s judgment that Eric would be happier with his father, because life would be more intellectually stimulating and exciting. Moreover, Eric is an emotionally stable child and appears to be fully capable of stating his preferences. The witness believes these preferences should be respected.
Dr. Lisa Tallal, M. D. is a qualified child psychiatrist. Dr. Tallal was associated with the Mental Health Clinic of the Family Court and New York Hospital. Dr. Tallal testified that she interviewed Eric and Pia on October 5 and 8, 1974. The witness stated that Pia appears to be "bright and solidly established in her latency stage of development. There was no evidence of thought disorder, but much guarding with respect to any discussion of the events at home.” Dr. Tallal stated that it was her professional evaluation that Pia most desperately wants to keep her family and since she knows her mother and father are divorcing, she clings to Eric as her "family”.
However, Pia was not willing to leave her future to Eric’s wishes, even though she knew he was outspoken in his wish to be with his father. Pia also stated her own wish to live with her father "even though she knew it would make her mother sad”. It would probably be in her best interest to not be *891 separated from Eric. It might be better for her to have liberal visiting arrangements with her mother, as often good quality visiting time is preferable to greater quantity with loss of objects.
Dr. Tallal further testified that she observed Eric to be intelligent and he shows no abnormal thought processes. His best defense is intellectualization. He sadly but philosophically accepts the fact that his mother and father cannot live together. He would rather not have the split take place, but he is definite about the fact that when it happens he wishes to remain with his father. He feels guilty and somehow disloyal toward his mother, but he states, "it is not that she does things that are so bad — it’s just that he understands and just does them so much better.” Eric is also attached to his sister, Pia, for whom he feels loving protectiveness. Dr. Tallal concluded by stating "There is no question that Eric’s self-determination should be respected. His own ego enhancement and self respect can only be benefitted as he realizes that his wishes are important to the primary people in his life.”
Dr. Stein, a duly qualified psychiatrist, testified on behalf of plaintiff. From his interviews with plaintiff over a period of time, he observed that Mrs. Salk exhibited some signs of extreme tensions and anxiety caused by her marital difficulties. She is not, he testified, a violent woman but does have a temper. However, recent interviews indicated that Mrs. Salk’s tensions and anxieties have lessened, her immaturity and insecurity have also diminished. She has now matured considerably and is able to make firm decisions. Once the marital difficulties are concluded, it is Dr. Stein’s expert opinion that Mrs. Salk will be able to make a better life for herself and for her children.
The court in the interest of justice, and because the adversary process does not lend itself to providing a neutral source for information, directed that the parties and the children be examined by a court-appointed psychologist and psychiatrist. The court obtained the consent of the parties and their respective attorneys, thus allowing the court to consider these confidential reports as an aid in deciding the issue of custody. (See Isaacs v Murcin, 38 AD2d 673; Falkides v Falkides, 40 AD2d 1074; Kesseler v Kesseler, 10 NY2d 445, mod 11 NY2d 716.)
The court appointed Dr. Richard Robertiello, M. D., a qualified psychiatrist, diplómate in psychiatry, American Board of *892 Psychiatry and Neurology. The court-appointed psychologist, Dr. Jack Granofsky, Ph. D., is presently Professor of Psychology at Hofstra University, Director of Long Island Institute of Mental Health.
The court-appointed experts submitted in depth and comprehensive reports on their observations and results of the psychiatric testing of the parties and children. The court has reviewed their reports and recommendations with great care and consideration.
The court is convinced that the conclusions reached by Dr. Robertiello and Dr. Granofsky confirm and support the findings and decision of this court, that both the children, despite exhausting and frequent interrogation about themselves and their feelings about this highly publicized case seem to be still relatively unaffected by the publicity or other people’s persuasions. Because of this their stated preference to see that their father should be awarded custody seems to be a genuine and well-considered choice.
The children’s preference is, of course, not the controlling criteria for the court in awarding custody to the defendant father. Since the birth of the children, Dr. Sálk has exhibited a vast interest in the various stages of the children’s development, his interaction with the children is not due solely to the fact that the father is a child psychologist.
The defendant’s successful relationship with his children is based, in part, on his ability to provide positive input into the children’s development, specifically, consistent affection, approval, acceptance, guidance, protection and control.
Dr. Salk is indeed a very bright, essentially stable person whose ability to conceptualize accurately and appropriately is quite superior — a fact which is reflected in turn in a high degree of competency to render proper and realistic judgments and skill in mastering effectively problems within himself and his environment, including those related to his children.
findings: visitation
The court would hope that the parties can arrange a visitation schedule that would afford plaintiff the opportunity to spend a great amount of time with the children. The court directs the following visitation schedule, with the understanding that the parties may mutually agree to modify the schedule, and that the children have the right to visit their mother *893 at any reasonable time, provided, that said visits do not interfere with the father’s expressed rights or their schooling.
(1) Plaintiff shall have alternate weekend visitation from Saturday 10:00 a.m. to Sunday 9:00 p.m., except that part of the summer and the year when either party has full custody.
(2) Plaintiff shall have the right of visitation on her birthday and on Mother’s Day.
(3) Plaintiff shall have the right" of visitation with Pia, on the child’s birthday (Dec. 12) on even-numbered years.
(4) The winter and spring recess shall be shared equally by the parties. Plaintiff may have the first part of the Christmas vacation, defendant the second half of the vacation. Same applies to spring recess.
(5) Plaintiff shall have the right to visit with the children on one weekday evening each week. The day to be agreed upon by plaintiff and the children.
(6) Plaintiff shall have the right of visitation with the children on the Thanksgiving holiday, falling in odd-numbered years.
(7) Plaintiff shall have visitation with the children the first three weeks in July or anytime after school closes. The defendant shall have the children during the last week in July and during the month of August. Parties shall notify each other of the children’s whereabouts at all times.
(8) Commencing with the summer of 1976, and each summer thereafter, defendant is directed to pay plaintiff the sum of $750 payable on or about the day plaintiff exercises her summer visitation rights. Said payments are in addition to any and all payments agreed to by the parties.
(9) The defendant shall have exclusive visitation of the children on his birthday and Father’s Day. Defendant shall have exclusive visitation on Eric’s birthday (Aug. 21).
(10) The children’s passports shall be turned over to the defendant forthwith.
(11) Neither parent shall remove the infant issue from the jurisdictional limits of North America and United States possessions without permission of the court.
To assure a continuing and qualitative relationship between the children and the mother and the mother and the children, the court makes the further direction that defendant consult plaintiff and keep her reasonably informed as to the following areas concerning the children:
*894 (a) School.
(b) Special lessons.
(c) Medical and dental.
(d) Psychological.
(e) Any substantial matter relating to health, education and welfare of the children.
Finally, the court would be remiss if it did not compliment Leon Appel, Esq., who appeared on behalf of plaintiff wife and Philip F. Solomon, Esq., who appeared on behalf of defendant husband, as to the highly professional manner in which both lawyers conducted themselves throughout the trial. The court has had many contested matrimonial matters before it, but it must comment that both attorneys throughout this bitterly contested litigation fully co-operated with the court to the extent that the facts and circumstances allowed.