Vincent A. Lupiano, J.
By this habeas corpus proceeding petitioner seeks continuance of the custody and visitation rights granted him under a separation agreement with respondent (his former wife) which was incorporated in a Nevada decree of divorce obtained by respondent against petitioner. The petitioner appeared in that action and the validity of that decree is in no wise challenged here.
The children involved herein are four and six years of age; the parties were married in 1945. In 1956 they sought legal *261 relief from their differences by retaining respective counsel who prepared a formal separation agreement which the parties executed on February 27, 1956. Extended recital of the provisions thereof may appear prolix here, yet parts of some of the provisions of the agreement and of the divorce decree, per se, are of such import to the rulings made at the hearing and to the ultimate determination, that such recourse becomes necessary. In the first instance, we find the following clause: “ Whereas, the parties hereto were married June 21, 1945, in the City and State of New York, and Whereas, there is issue of the marriage, to wit, Abby Christine Abajian, born February 1, 1952 and Edward Charles Abajian, born April 13, 1954 ”. Then we find throughout the agreement reference to the children in the following significant words: “ to provide for the support and maintenance of the wife and children”; “to provide for the custodial and visitation rights with respect to the children”; “Fourth: the Husband agrees to pay for the support and maintenance of the Wife and the children”; “Fifth: the Wife shall have the care and custody of the two children of the marriage ”; “ D. * * * the Husband shall have the right to direct the school to which the son shall be sent, and the Wife shall have the right to direct the school to which the daughter shall be sent. ’ ’ (Note. All italics, hereinbefore and hereinafter, for emphasis, is by the court.)
Shortly after execution of the separation agreement respondent moved with the children to Nevada, where she established her residence and sued petitioner for a divorce. He appeared in the action, and on April 27, 1956 she procured a decree of divorce against him. The separation agreement, in respect of all matters pertaining to the care, custody and control of the children, was incorporated into the decree by the following language: “ It is Further Ordered, adjudged and decreed that the agreement, made * * * between the parties bearing date of February 27, 1956, be and the same is hereby ratified, approved and adopted by this Court, and said agreement and all of the terms and provisions of same and all matters pertaining to the care, custody and control, support and maintenance of the minor issue of this marriage, to wit, Abby Christine Abajian aged four years, and Edward Charles Abajian aged two years, are hereby incorporated herein * * * and the custody of said minor children is hereby awarded to the parties as provided in said agreement, and each of the parties hereto is ordered and directed to comply with all of the terms and conditions of said agreement.”
*262 Sometime later, in 1957, tlie agreement and decree was modified by the parties to the extent only of giving respondent certain visitation privileges during the summer months when the children were decreed in petitioner’s custody. This, then, was the relationship of the parties and the children which, for a while, continued smoothly enough. It appears that during the Summer of 1956 respondent had delivered the children to petitioner who took them to live with his aunt at Goshen, New York; both petitioner and respondent were then employed in New York and each stayed with the children at Goshen on alternate weekends. From September, 1956, until June of 1957, the children resided with respondent; the petitioner had alternate week-end privileges.
In May, 1957, petitioner remarried. During July and August of 1957, the children resided with petitioner and his present wife in a large house in Connecticut where two servants and a governess were employed. Late in August respondent requested petitioner to keep the children an additional week because she was preoccupied with the illness of her fiance, then confined to a hospital. Petitioner agreed and the children remained over. Respondent married her said fiance on December 13, 1957. Again, it may be noted that until this time the custody and visitation relationship of the parties with the children continued harmoniously, with no question of parentage raised.
On December 11, 1957, petitioner made a formal request that the children be available for visit with him. Respondent replied that they could be kept only for a week conflicting with the period accorded petitioner by the agreement and decree. Notwithstanding, petitioner had the children from December 24, 1957 to January 5,1958 when they were returned to respondent. Thereafter, petitioner notified respondent that he would call for the children on January 17. To this, respondent declared that he could no longer see the children. Met with such definite refusal petitioner instituted this proceeding by habeas corpus to enforce his rights under the aforesaid separation agreement and decree of Nevada. Respondent filed her return alleging affirmatively, for the first time, that ‘ ‘ the aforesaid infant children were both born to the respondent as a result of artificial insemination.” On this ground, respondent argues that petitioner is not the father of the children and hence should not be accorded any custody or visitation rights. On the other hand, petitioner, outraged by this radical utterance, challenged the general fitness of respondent to retain custody of the chil *263 dren and seeks general over-all custody, or failing in that complete measure, persists in seeking the rights of custody and visitation given him under the separation agreement and the Nevada divorce decree.
The court afforded both parties a full and complete hearing which included a private interview with the children. Before the hearing was well under way, the court had formed the opinion, and so ruled, that it could not permit respondent to litigate the issue of artificial insemination. It was then apparent that certain incontrovertible proof barred such an issue and the court’s broad rulings in this respect are amply and retrospectively demonstrated by the entire record. An offer of proof, however, was made available to the respondent. It seems clear now, and was then, that such issue could not take its place among the issues presented in this special proceeding. Petitioner’s irrefutable proof of the separation agreement, and the Nevada divorce decree, initially given, made proof of the controversial issue incompatible and irrelevant. Upon examination of the very language of the relevant portions of the separation agreement and of the divorce decree of Nevada, which adopted and confirmed the agreement (which were purposefully recited at length hereinbefore), it was significantly noted that throughout these documents the parties and the children were consistently referred to as “ the wife ”, “ the two children ”, ” the husband and wife ”, “ the son “ the daughter “ the children”, “ the minor issue of this marriage.” Nowhere is there found language, or exception, which in any wise would indicate or imply that the two children were other than the children of the parties. Certainly, if respondent had any reservation to make in respect of her claim that the children were hers alone, because of artificial insemination, it is obvious that such claim could and should have been openly asserted by her in the separation agreement and, even more particularly so, when she sought her divorce decree. Not having done so, the agreement has certain legal force and consequence; furthermore, the decree is entitled to be given full faith and credit, being the valid decree of a sister State — in this case, Nevada. Moreover, respondent’s prior and subsequent conduct has given recognition to the petitioner’s right as parent of the children, and by so doing she, herself, furnishes the sufficient legal bases to estop the assertion of any contrary claim. It may be further reasoned in support of the court’s ruling to refuse litigation of the controversial claim that whatever now motivates respondent to assert the claim of artificial insemination, so as to extinguish petitioner’s privileges of custody and visitation, most *264 assuredly does not inure to the benefit of the children. For to stigmatize them as children of an unknown father by means of artificial insemination of the mother is no more, in my view, than an attempt to make these innocents out as children of bastardy. And where a parent attempts such means, the law will still the lips of such a parent. This I believe will be done even where artificial insemination is lawful, for, on the last turn, it is the children who, when so revealed, must go through life in such obfuscation. For now, however, the respondent’s thrust at law, bluntly returned, may only serve to boomerang the conscience, since, regardless of the verity of respondent’s claim in this respect, I have not, and cannot, permit her to litigate the attempted issue, for that would destroy the very essence of the Nevada decree as well as to allow her to do something opposed to her own previous doing. Estoppel is clearly indicated. As the matter now stands, if respondent is desirous of now impugning that decree and the facts upon which it was then entered, to the extent here indicated, viz., that the children are not the children or issue of petitioner, she should, it seems, pursue that attack in Nevada, if she is so disposed. For on this record, all that this court is now concerned with, under relevant issues presented by this habeas corpus proceeding, is whether or not petitioner, as a parent, is entitled to the relief sought.
Prima facie, at least, petitioner evidences such right by virtue of the Nevada decree. That our courts are bound to extend full faith and credit to valid decrees of sister States and recognize an award of custody validly made by a court of competent jurisdiction, is firmly established in our law (Davis v. Davis, 305 U. S. 32; Ansorge v. Armour, 267 N. Y. 492, 498). This is so where, as here, that court had jurisdiction of the subject matter, the parties and the children. However, the mandate of full faith and credit is not all conclusive in respect of custody decrees, for a child’s welfare “ has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State’s discharge of its responsibility at another time ” (May v. Anderson, 345 U. S. 528, 536). And so there is now invoked a long line of case law in this State which enunciates the holding that the responsibility for the welfare of children endows the court with power to determine their custody, irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction, and that such responsibility transcends the rule of comity as well as full faith and credit; that the decrees of such States in no way diminish the prerogative of the courts of the *265 State of New York, as “ parens patriae ” to do what it considers best for the welfare of the child ivithin its jurisdiction (Matter of Bachman v. Mejias, 1 N Y 2d 575, 581; People ex rel. Herzog v. Morgan, 287 N. Y. 317; Matter of Bull [Hellman], 266 App. Div. 290, affd. 291 N. Y. 792; People ex rel. Halvey, 185 Misc. 52, affd. 269 App. Div. 1019, affd. 295 N. Y. 836; affd. sub nom. New York ex rel. Halvey v. Halvey, 330 U. S. 610; Finlay v. Finlay, 240 N. Y. 429, 431). These holdings however do not mean that our courts will change the Nevada decree simply because we do not agree with it. Comity, to that extent, is still present where a court of a sister State has adjudicated in respect of custody with the parties and children before it. It is when circumstances have changed since the decree which render it necessary for the child’s best interests that a change in custody and visitation be made (Finlay v. Finlay, supra). Therefore, where the parties and the children are now within the jurisdiction of our courts, as here, we have the unquestioned right, and in fact duty, under the afore-cited authorities, to determine whether there has been any change in circumstances and conditions since the making of the Nevada decree which would warrant change in the custody and visitation provisions of such decree for the best interests and welfare of the children herein.
It has oft been stated that children should not be made the pawns of contending parties nor should they be permitted to be used as the means of gratifying the personal desires of either parent. Respecting petitioner’s evaluation that respondent’s asserted defense renders her unworthy as a mother, the extent to which respondent went to obtain exclusive custody of the children has left a sour taste upon the judicial palate; yet it can not be questioned that the mother herein regards the products of her own travail very dearly. Consumed with maternal feeling, though mixed up with less laudable ones, she imperiled, but did not lose, her fitness and rights as their proper custodian. While I refused proof by respondent on her claim of artificial insemination, I nevertheless afforded her every opportunity to prove whether there was such a change of circumstances in the relationship of the petitioner with the children as would require a change or modification of his rights to custody and visitation, and diminution of such privileges. Respondent’s evidence in this respect fell far short of its mark. Nothing whatever was proved by her which in any manner impugned petitioner’s character or his fitness to continue as a proper and suitable repository of the custody of the children (Matter of Fierro [Ljubicich], 5 Misc 2d 202). On the contrary, it established that petitioner is entirely devoted to the children; that they are *266 very devoted to him and return his love and affection; that they are well cared for and well treated when in the care of petitioner and his present wife, and that the best interests df the two children require such continued relationship with petitioner. This is buttressed by my observations of the parties and my private interview with the children. Unquestionably the entire course of relationship and conduct between petitioner and respondent towards the children and in each other in respect of them was one of mutual consideration and forebearance right up to the time of respondent’s marriage. And this was so even after petitioner’s remarriage. However, upon respondent’s marriage to her present husband, her attitude changed diametrically — the timing is patently obvious. All of this is indeed unfortunate, for unless hostilities and rivalry for the custody of the children are now curbed it may well have serious and damaging effect upon the children in the future. The peace and tranquility of their relations with both petitioner and respondent, which had existed until this proceeding, should not be destroyed. On this plea the court urges the parties to consider only the welfare of the children. In this manner their love, feelings, affection and mental processes will not be affected so as to make them insecure and ambivalent in their parental relations.
In conclusion therefore, 1 find that respondent has not established any facts which show a change of circumstances as to warrant change of the provisions of the Nevada decree. On the contrary, as hereinabove stated, the best interests and welfare of the children require that they have the continued love and affection of petitioner and that lie continue to have the custody and visitation rights with the children such as were granted him by the separation agreement and later embodied in the decree of Nevada. The writ is therefore sustained to the extent hereinabove indicated. The court further orders that the papers in this case be filed in the County Clerk’s office and sealed.
Settle order.