Nathan R. Sobel, S.
The issue in this proceeding is one of first impression in this or any other jurisdiction. The problem however has been with the courts since the first utilization by the medical profession of artificial insemination.
As a preliminary, there are two types of artificial insemination. Homologous insemination is the process by which the wife is artificially impregnated with the semen of her husband. This procedure is referred to as AIH (artificial insemination husband) and creates no legal problems since the child is considered the natural child of the husband and wife. Heterologous insemination is the artificial insemination of the wife by the semen of a third-party donor. This procedure is referred to as AID (artificial insemination donor). AID may be “ consensual ”, i.e., with the consent of the husband, or “ nonconsensual ”, i.e., without his consent. As will he observed in later discussion there are very few reported decisions concerning consensual AID and none at all with respect to non-consensual AID. (With respect to the latter see, however, note, Artificial Insemination and the Law, 1968 U. of Ill. L. Forum 203, 21A-223.)
Predictably issues involving AID children will multiply. The medical technique of artificial insemination is of relatively recent origin — about 30 years old. The parents of these children will die and create for the courts problems of intestate succession and will construction. The utilization of AID procedures is bound to increase because of the unavailability— no doubt due to the “pill” and liberalized abortion laws — of adoptive children. Relatively recent too is the practice of AID where the husband’s family has a history of hereditary disease or where RH incompatibility has led to repeated stillbirths. As yet the legislatures and the courts have been unresponsive in declaring the status and rights of AID children.
The facts in this proceeding are briefly stated. During the marriage the child was born of consensual AID, The *101 husband was listed as the father on the birth certificate. Later the couple separated and the separation was followed by a divorce. Both the separation agreement and the divorce decree declare the child to be the “daughter” and “child” of the couple. The wife was granted support and the husband visitation rights. He has faithfully visited and performed all the support conditions of the decree. The wife later remarried and her new husband is petitioning to adopt the child. ' The first husband has refused his consent. Confronted with that legal impediment, the petitioner has suggested that the first husband’s consent is not required since he is not the “ parent ” of the child.
The statute (Domestic Relations Law, § 111) requires the consent of both “ parents ” of a child born in wedlock. There are circumstances in which consent may be dispensed with (abandonment, insanity, divorce for adultery, etc.) but none are present here. If the husband is the “ parent” of a child born of consensual AID, in the absence of his consent to the adoption, the petition must be dismissed.
A very few States have enacted statutes governing the-status and rights of AID children. Two of the statutes are comprehensive. (Okla. Stat. Ann., tit. 10, §§ 551, 553; Ariz. Rev. Stat. Ann., § 14-206); (see, note, A Legislative Approach to Artificial Insemination, 53 Cornell L. Rev. 497 [1968].) New York City has a health ordinance and regulations confining AID treatment to the medical profession and regulating procedures and required records. (N. Y. City Health Code, § 112; for code and regulations see Boardman’s New York Family Law, § 217.) Neither the code nor the regulations declare the legal rights of the parties. Legislation has been introduced in New York at a number of legislative sessions. It is of interest to observe that in 1948 the New York County Lawyers Association opposed a bill (S. Int. No. 745, Pt. No. 2042; N. Y. County Lawyers Assn. Memo., No. 114 of 1948) because the rights of the parties were obvious and legislation unnecessary. Following the Ourshy decision, discussed infra, declaring AID children illegitimate, the association in 1964 recommended favorably a bill substantially similar to the one opposed earlier. (S. Int. No. 1882, Pt. No. 1922; N. Y. County L. Assn. Memo., No. 179 [1964].)
It is evident that the problems created by consensual AID are not limited to the single issue before this court, viz., the necessity of the consent of an AID father to an adoption.
*102 There are, as noted, few reported cases, hut it is likely that in the future issues will be raised in other contexts. For example : The right of the AID child to inherit from and through the “ father ” and the “ father ” from and through the child. No cases deal with this issue. (See, note, 53 Cornell L. Rev. 497, 507-509.)
In the above and other respects the ‘ ‘ legitimacy ’ ’ of the child in view of the strong presumption of legitimacy. (People v. Sorensen, 68 Cal. 2d 280 [legitimate, dicta, 1968]; Gursky v. Gursky, 39 Misc 2d 1083 and cases cited [illegitimate]; Biskind, Legitimacy of a Child Born by Artificial Insemination, 5 J. Family L. 39, 47 [1965]; Smith, Artificial Insemination — No Longer a Quagmire, 3 Family L. Q. 1 [1969].)
As precluding the wife’s right to an annulment for husband’s sexual incapacity (see 25 ALR 3d 1103, 1108).
As constituting adultery by the mother. (People v. Sorensen, 68 Cal. 2d 280 [dicta; not adulterous]; Hock v. Hock [Ill. Cir. Ct., 1945] ; unreported but see 1965 Wise. L. Rev. 859, 875 [not adulterous]; Doornbos v. Doornbos [Ill. Super Ct., 1945]; unreported but see 23 USLW 2308 [held adulterous].)
As respects the right of the child and the duty of the “ father ” to support. (People v. Sorensen, 68 Cal. 2d 280, supra; Gursky v. Gursky, 39 Misc 2d 1083 [child illegitimate but implied promise by father to support and equitable estoppel]; Anonymous v. Anonymous, 41 Misc 2d 886 [implied promise by husband and equitable estoppel.]
As respects visitation rights of the “father”; (People ex rel. Abajian v. Dennett, 15 Misc 2d 260 [wife estopped from contesting father’s right]; Strnad v. Strnad, 190 Misc. 786 [father granted visitation rights].)
The leading case in the Nation is People v. Sorensen (68 Cal. 2d 680, supra; Ann. 25 ALR 3d 1103; case note, Artificial Insemination Upon Whom the Duty to Support Rests, 17 De Paul L. Rev. 525 [1968].) It is the only reported decision by an appellate court. Sorensen was a criminal prosecution on complaint of the welfare authorities against the husband for failure to support a minor child born during the marriage of consensual AID. The California Supreme Court without dissent held: the defendant is the lawful father of a dependent child born of consensual AID; that the term “father” as used in the penal statute is not limited to a biologic or natural father; the determinative factor is whether the legal relationship of father and child exists. The court reasoned that a child conceived through AID does not have a “ natural ” father; that the anonymous *103 donor is not the “ natural ” father; that he does have a “ lawful ” father and the intent of the Legislature was to include a lawful father in the penal sanctions; further (p. 285), that “ In light of these principles of statutory construction, a reasonable man who, because of his inability to procreate, actively partici-/ pates and consents to his wife’s artificial insemination in the! hope that a child will be produced whom they will treat as their own, knows that such behavior carries with it the legal responsibilities of fatherhood and criminal liability for nonsupport. One who consents to the production of a child cannot create a temporary relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose an obligation of supporting those for whose existence he is directly responsible.” This is the principle of equitable estoppel found in several other cases.
With respect to AID as constituting adultery of the mother the court added (p. 289): “In the absence of legislation prohibiting artificial insemination, the offspring of defendant’s valid marriage to the child’s mother was lawfully begotten and was not the product of an illicit or adulterous relationship.” As respects the legitimacy of the child (p. 289): “ Nor are we persuaded that the concept of legitimacy demands that the dhild be the actual offspring of the husband of the mother and if semen of some other male is utilized the resulting child is illegitimate.”
The leading case in New York and the only one which discusses the issue is Gursky v. Gursky (39 Misc 2d 1083, supra). The husband sued the wife for separation and despite the birth of a child to them by consensual AID, he alleged that there were no issue of the marriage. The wife counterclaimed for annulment on grounds of her husband’s sexual impotence and won. The issue of the legitimacy of the child arose in the context of the wife’s right to receive support for the AID child. The court found an implied promise to support the child and equitable estoppel from the consent of the husband to the AID procedures.
The basic finding however (p. 1088) was that “ the child * * * which .was indisputably the offspring of artificial insemination by a third-party donor with the consent of the mother’s husband, is not the legitimate issue of the husband.” This conclusion was premised on (a) “ The concept which historically is deeply imbedded in the law is that a child who is/ begotten through a father who is not the mother’s husband is 1 deemed to be illegitimate ” (p. 1085); (b) on the statutory definition of a “ child born out of wedlock ” as a child who is *104 “ begotten and born out of lawful matrimony ” (Domestic Bela- - tians Law, former § 119 now Family Ct. Act, § 512); (c) on the failure of the Legislature to enact statutes legalizing the status of AID children.
At a trial, the issue before this court could be decided on the basis of the strong presumption of legitimacy of children born during the marriage. (Matter of Matthews, 153 N. Y. 443; Matter of Findlay, 253 N. Y. 1, 7.) In the absence of absolute medical proof of the husband’s sterility, that presumption would be conclusive. (Commissioner of Public Welfare v. Koehler, 284 N. Y. 260, 264; Boardman’s Family Law, § 117.) The issue has however been submitted as one of law and is decided on that basis.
At the outset, it is observed that Gurshy is not persuasive. It is the only published decision which flatly holds that AID children are illegitimate. It has been criticized. (Note, 1968 U. of 111. L. Forum 203, 208.) The “historical concept” and the statutory definition of “ a child born out of wedlock ’ ’ upon which it relies were developed and enacted long before the advent of the practice of artificial insemination. The birth of AID children was not then contemplated. An AID child is not “ begotten ” by a father who is not the husband; the donor is anonymous; the wife does not have sexual intercourse or commit adultery with him; if there is any 1 ‘ begetting ” it is by the doctor who in this specialty is often a woman. The suggestion that the husband might not regard the child as his own has been dispelled by our gratifying experience with adoptive parents. Since there is consent by the husband, there is no marital infidelity. The child is not born ‘‘ out of wedlock ’ ’ but in and during wedlock. And finally legislative inaction is an unsound basis for any inferences favorable or unfavorable. Bills are not reported or voted on favorably for a variety of reasons, not the least of which is that legislative consideration is unnecessary because the courts can reach an acceptable solution.
The two cases discussed represent all the decisional law on the subject. This is not much in the way of precedent since the issues in both cases were limited by the nature of each proceeding.
Basically the problem of the status of AID children vis-á-vis the “ father ” is one of policy. Policy is best made by our appellate courts. This decision is purposed to present the problem for such determination.
New York has a strong policy in favor of legitimacy. This is l evidenced by the recent enactment of section 24 of the Domestic *105 Relations Law. (Added by L. 1969, ch. 325, § 1 eff. April 30,1969; see, also, Report of N. Y. Law Rev. Comm.; N. Y. Legis. Doc., 1969, No. 65C.) Under that statute a child born of a void (Domestic Relations Law, § 6) or voidable (Domestic Relations Law, § 7) marriage, even if the marriage is .deliberately and knowingly bigamous, incestuous or adulterous, is legitimate and entitled to all the rights (inheritance, support, etc.) of a child born during a perfectly valid marriage. In the face of the liberal policy expressed by such a statute, it would seem absurd to hold illegitimate a child born during a valid marriage, of parents desiring but unable to conceive a child, and both consenting and agreeing to the impregnation of the mother by a carefully and medically selected anonymous donor.
It must be recognized that there exist moral and religious objections to artificial insemination. (See, comment, 19 Syracuse L. Rev. 1009, 1011-1013.) But these are stronger against bigamous, incestuous and adulterous relationships. That such objections have not prevented as a matter of State policy the legitimation of the children of such marriages, establishes that our liberal policy is for the protection of the child, not the parents. It serves no purpose whatsoever to stigmatize the AID child; or to compel the parents formally to adopt in order to confer upon the AID child the status and rights of a naturally conceived child.
It is determined that a child born of consensual AID during a valid marriage is a legitimate child entitled to the rights and privileges of a naturally conceived child of the same marriage. The father of such child is therefore the “ parent ” (Domestic Relations Law, § 111) whose consent is required to the adoption of such child by another.
The petition for adoption of the child by the stepfather must be dismissed.