OPINION OF THE COURT
Bertram R. Gelfand, J.
The court will address, ab initio, the framed question of *824 whether children born in 1960 and 1962, respectively, during wedlock, by means of the artificial insemination of the wife by a third-party donor, with the consent of the husband, possess the status of issue of the husband.
New York, by statute, now explicitly provides under Domestic Relations Law § 73 (1) that "[a]ny child born to a married woman by means of artificial insemination performed * * * with the consent in writing of the woman and her husband, shall be deemed the legitimate, natural child of the husband and his wife for all purposes” (L 1974, ch 303, § 1). Neither this statute nor any similar statutory provision existed at the time of the death of decedent or of the birth of either objectant. As is often the case, new technology must become firmly implanted before the legal issues raised by this technology become the subject of a statutory enactment.
At the threshold, it is appropriate to address, what, if anything, was the impact of the 1974 statute on the status of objectants. Ordinarily, statutes are to be construed as prospective in the absence of a clear expression of legislative intent to the contrary (Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150; Matter of Mulligan v Murphy, 14 NY2d 223; Matter of Ayman v Teachers’ Retirement Bd. of City of N. Y., 9 NY2d 119; People v Ennis, 94 AD2d 746; New York State Water Resources Commn. v Liberman, 37 AD2d 484). Neither party has presented a basis from which the court can discern a legislative intent that Domestic Relations Law § 73 is to be applied retroactively.
There is much to suggest that the formal requirements of a statute of this nature were never intended to be applied retroactively. Logic is a presumed part of legislative intent. Clearly, it was not the intent of the Legislature to wipe out the relationship of children created by artificial insemination to their mother’s husband because a writing not required by law at the time of their birth was never executed. In this case, the parties conceded the consent of the husband of objectants’ mother. Nevertheless, the record fails to reflect the writing which would constitute compliance with the basic requirement of the subsequently enacted statute. However, the absence of a statute on the subject at the time that objectants were conceived does not preclude them from becoming, at the time of their respective births, the children of their mother’s husband. As is often the case, prior to a subject being codified, it is addressed and controlled by case law.
*825 A clear basis for objectants’ position can be discerned in the development of the common law prior to the enactment of the 1974 statute. Although the relevant decisions present a divergence of views, the weight of authority evinces the considered determination that a child conceived during a marriage by artificial insemination, with the husband’s consent, was the legitimate issue of the husband entitled to all of the rights and privileges of a naturally conceived child of the marriage (Matter of Anonymous, 74 Misc 2d 99; see also, Strnad v Strnad, 190 Misc 786; People ex rel. Abajian v Dennett, 15 Misc 2d 260; contra, Gursky v Gursky, 39 Misc 2d 1083). The rationale for this position is the overriding public policy of the State to place as far beyond dispute as possible the legitimacy of children born to a married woman (see, State of New York ex rel. H. v P., 90 AD2d 434; see also, People ex rel. Abajian v Dennett, supra). This court is in accord with the holding expressed by my learned former colleague, Surrogate Sobel, in Matter of Anonymous (supra, pp 104-105), that: “New York has a strong policy in favor of legitimacy * * * In the face of [this] policy * * * it would seem absurd to hold illegitimate a child born during a valid marriage, of parents desiring but unable to conceive a child, and both consenting and agreeing to the impregnation of the mother”. This position is a simple illustration of the essential judicial capacity to equitably modernize the law to adjust to the dynamics of constantly advancing technology. The law cannot, and does not, remain static while science moves forward. That the initial stages of change flow from case law prior to being embodied in statutes is far from a phenomena that is unique to the subject of artificial insemination.
In the instant matter, the agreed facts clearly establish that the mother of objectants conceived each of them by artificial insemination with the knowledge and consent of her then husband. At the time of these events, there was no legal requirement that this consent had to be evidenced by a writing. That a subsequently enacted statute requires such a writing should not be a bar to the status of issue conceived by artificial insemination who were conceived prior to the enactment of the statute. Accordingly, it is concluded that objectants at the time of their birth were issue of decedent’s son.