OPINION OF THE COURT
Stacy D. Bennett, J.
The petitioner Ms. H. is the former girlfriend of respondent biological mother Ms. L. (hereinafter respondent). The petitioner commenced this proceeding against respondent on August 28, 2006, and thereafter amended her petition on November 26, 2006 to include Columbia County Department of Social Services (hereinafter respondent DSS). The petition seeks custody of YL., the infant issue of the respondent.
The issue before this court is whether the petitioner, who is not a parent pursuant to the statutory definition, has standing to seek custody of the subject child.
Now, upon careful review and due consideration of all of the evidence presented, the court makes the following findings of fact and conclusion of law.
Facts
The hearing was held on April 30, 2007, May 15, 2007 and June 8, 2007. The petitioner and respondent testified during petitioner’s case-in-chief. Both respondents rested without presenting any testimonial or documentary evidence. The respondent testified throughout the trial that she consented to an order awarding petitioner custody of YL. The Law Guardian and respondent DSS opposed such application alleging the petitioner lacked standing to pursue custody.
The petitioner testified that she met the respondent at a night club in early 2005 and within two months they began an intimate relationship. Shortly thereafter, the respondent moved in with the petitioner and her two children (ages 12 and 19) from a prior relationship. Petitioner and respondent testified that they had numerous conversations about having a child together via in vitro fertilization. The respondent testified that prior to meeting petitioner, she traveled to an upstate clinic with her former girlfriend for the in vitro fertilization procedure and was artificially inseminated by an unknown sperm donor. In June 2005 the parties discovered that the respondent was pregnant. The petitioner testified that the parties agreed “if Respondent had a baby, I would take care of him.” The testimony of the respondent confirmed such agreement. Further, it is undisputed that the petitioner took the respondent to *1036 all of her prenatal visits, was present during the birth of the child, cut the umbilical cord, slept in the hospital room with the respondent, fed and diapered the child and would wake up throughout the night to feed and care for the child. The respondent testified that petitioner “did what a husband would do for a wife during her pregnancy.” Throughout the proceeding, the petitioner referred to herself as the “second mother” of VL. The parties testified that after the birth of VL. they moved from Queens to Massapequa at which time the respondent returned to work while the petitioner continued to care for all of the child’s needs, including taking the child to all of his doctor visits. This arrangement continued until August 2006 when the relationship ended. The respondent moved out of the petitioner’s home and into a shelter leaving the child with the petitioner. The parties agreed that petitioner would care for VL. until the respondent found suitable living quarters. The parties arranged a visitation schedule where the petitioner would bring the child into New York City for visits with the respondent. The petitioner testified that in August 2006, during a visitation exchange, an argument ensued over financial support of the child and as a result the respondent called the police alleging the petitioner refused to return her son. Consequently, Administration for Children’s Services (ACS) of New York County removed the child and placed him in the custody of the Department of Social Services in Columbia County. The child has resided with a foster family since August 2006.
Related Proceeding
On August 25, 2006 Columbia County Department of Social Services brought a proceeding pursuant to article 10 of the Family Court Act seeking a finding of neglect and the temporary placement of VL. A finding of neglect was entered against respondent on May 7, 2007 by the Columbia County Family Court (Nichols, J.). However, the court did not terminate respondent’s parental rights, opting instead to direct a 12 month order of supervision. It is unknown whether or not the respondent is cooperating with the order of supervision.
The Law
It has long been recognized that as between a parent and a third person, parental custody of a child may not be displaced absent grievous cause or necessity (People ex rel. Kropp v Shepsky, 305 NY 465, 469 [1953]). The underlying rationale for this rule is that there is a presumption that it is in a child’s best interest to be raised by at least one parent unless the parents *1037 are determined to be unfit. (See, Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 204 [1971]; see also, Family Ct Act §§ 614, 651.)
Moreover, neither the Legislature nor the Court of Appeals has seen fit to include in the term “parent” a biological or legal stranger who has developed a long-standing, loving and nurturing relationship with the child or has had a prior relationship with the child’s parents and wishes to continue visitation. (See, Matter of Alison D. v Virginia M., 77 NY2d 651, 654 [1991].) Pursuant to 18 NYCRR 422.1, a parent is defined as a biological, step, or adoptive parent of a child whose custody and care have been transferred to an authorized agency.
In the instant proceeding, the only “biological parent” is the respondent mother who lost temporary custody of VL. to the Columbia County Department of Social Services. The statute governing such removal is explicit and provides:
“The parent of a child remanded or committed to an authorized agency shall not be entitled to the custody thereof, except upon consent of the court, public board, commission, or official responsible for the commitment of such child, or in pursuance of an order of a court or judicial officer of competent jurisdiction, determining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child. The name of such child shall not be changed while in the custody of an authorized agency.” (Social Services Law § 383 [1].)
The Court of Appeals has articulated the narrow exception in which a court may consider standing and best interest. In extraordinary circumstances, such as abandonment, and neglect, the best interest of the child test is sparked, and nonbiological parents may be issued standing to seek custody of the minor. (See, Matter of Bennett v Jeffreys, 40 NY2d 543, 546-548 [1976].) In determining whether extraordinary circumstances exist, the court should consider the length of time the child has lived with the nonparent, the quality of the relationship and the length of time the biological parent has allowed such custody to continue without trying to assume the parental role. (See, Matter of McDevitt v Stimpson, 281 AD2d 860 [2001].)
Here, the testimony of both petitioner and respondent support a finding that the petitioner demonstrated a prima facie basis for establishing standing. It is undisputed that during the *1038 first eight months of the child’s life, until he was removed by ACS, the petitioner carried out all of the traditional responsibilities of a parent. Notwithstanding that pursuant to statute, the petitioner is a “biological stranger” to the child, the court finds extraordinary circumstances exist which maintain a sound basis for standing here.
However, establishing standing is not the end of the analysis insofar as the issue of custody is concerned. Instead, the court must make a further determination whether custody to the petitioner is in the best interest of the child. (See, Friederwitzer v Friederwitzer, 55 NY2d 89 [1982].) Where extraordinary circumstances exist, the court must then make a determination regarding custody based on the child’s best interest (Bennett v Jeffreys, supra; Matter of Bevins v Witherbee, 20 AD3d 718 [2005]; see also, Matter of Ratliff v Glanda, 263 AD2d 816 [1999]). The burden of proving the existence of such extraordinary circumstances is on the nonparent. (See, Matter of Campbell v Brewster, 9 AD3d 620 [2004]; Matter of Rudy v Mazzetti, 5 AD3d 777 [2004]; Matter of McGraw v McGraw, 258 AD2d 464 [1999].)
The court notes the Law Guardian’s position that it is in VL.’s best interest that he remain in the care and custody of his foster parents who have cared for the child since August 2006. Such argument is premature at this juncture and should be made during a “best interest” hearing to determine custody. Conclusion
Since the subject child resides in Columbia County where the related article 10 proceeding is pending, the court finds that Columbia County is the appropriate venue to hear the within custody petition. (See, CPLR 510; Solid Tr. v Venture Opportunities Corp., 256 AD2d 127 [1998].)
Accordingly, it is hereby ordered that the court finds the petitioner, Ms. H., has standing to seek custody of the child VL., and it is further ordered that the matter be transferred to Columbia County Family Court for further custody determination.